74588. KNIGHT et al. v. GEORGIA FARM BUREAU MUTUAL
INSURANCE COMPANY.
(361 SE2d 190)

SOGNIER, Judge.

Georgia Farm Bureau Mutual Insurance Company sought a declaration of its rights and obligations under two automobile insurance policies in which Rodney Knight was a named insured. The case arose from an incident in which Knight was injured while riding as a passenger in an automobile driven by Preston Andrew Stewart and owned by Stewart's father. Knight and his mother, Blanche M. Page, brought suit against the Stewarts to recover damages for Knight's injuries and loss of his services. Although not a party, Georgia Farm Bureau, Knight's uninsured motorist insurance carrier, was served in that suit pursuant to OCGA § 33-7-11 (d). Georgia Farm Bureau did not answer in the tort action, either in its own name or in behalf of the Stewarts, but instead brought this action seeking a declaration that it had no obligation arising from the accident. The trial court granted summary judgment in favor of Georgia Farm Bureau and denied Knight and Page's cross-motion for summary judgment. Knight and Page appeal from both rulings.

It is undisputed that the Stewart vehicle was insured under two policies with liability limits of $25,000 and $100,000 issued by State Farm Mutual Insurance Company, and that the uninsured motorist coverage in each of the two policies issued by appellee covering appellants had a $10,000 limit, the statutory minimum at that time.

1. Appellants contend the determination that the Stewart automobile was not an "uninsured motor vehicle" under the provisions of OCGA § 33-7-11 (b) (1) (D) was premature, and thus the trial court erred by granting summary judgment in favor of appellee, thereby releasing appellee from its obligation to provide uninsured motorist coverage to appellants.

In defining "uninsured motor vehicle," OCGA § 33-7-11 (b) (1) (D) sets forth five situations under which a motor vehicle may be statutorily deemed "uninsured." Appellee's argument centers on subsection (ii), which provides that a vehicle is deemed "uninsured" when there is "liability insurance with limits of coverage which are

less than the limits of the uninsured motorist coverage provided under the insured's insurance policy . . . ." Appellee asserts that because the Stewart vehicle was insured, with liability insurance limits *higher* than the limits of appellants' uninsured motorist coverage, it cannot under the provisions of subsection (ii) be an "uninsured motor vehicle," and thus appellee has no obligation to appellants as their uninsured motorist insurance carrier. This argument, however, ignores the existence of the other four situations listed in OCGA § 33-7-11 (b) (1) (D), specifically subsection (iii), which provides that a vehicle is considered uninsured if liability insurance exists "but the insurance company writing the insurance has legally denied coverage under its policy." We do not agree with appellee that the failure of the Stewart vehicle to qualify as an "uninsured motor vehicle" under subsection (ii) is dispositive of the question whether the Stewart vehicle is an "uninsured motor vehicle" under the remaining subsections of OCGA § 33-7-11 (b) (1) (D). Established principles of law require that wherever possible we construe statutory language in a manner that will not render it meaningless or mere surplusage. See *State of Ga. v. C. S. B.*, 250 Ga. 261, 263 (297 SE2d 260) (1982). Nothing in the statutory language indicates that subsection (ii) is the determinative factor as to whether a vehicle is "uninsured" under the statute. We reject appellee's argument that this court's opinion in *State Farm &c. Ins. Co. v. Hancock*, 164 Ga. App. 32 (295 SE2d 359) (1982), requires us to construe subsection (ii) as a necessary element in the definition of *all* uninsured motor vehicles. The issue in *Hancock*, supra, (whether "stacking" uninsured motorist coverage was permissible where the tortfeasor was underinsured rather than uninsured) required analysis of only that portion of the statute relevant to the facts in that case, and thus the opinion dealt only with subsection (ii). We note this court's decision in *Harwell v. Continental Ins. Co.*, 183 Ga. App. 410 (359 SE2d 172) (1987). We do not find that decision is in conflict with our holding today. In *Harwell*, we were called upon to construe only OCGA § 33-7-11 (b) (1) (D) (ii), and we decided that prior to its amendment, that subsection did not include a situation such as the one sub judice, because the specific language used, "limits of coverage," could not be construed to mean "available coverage." Such an argument is not advanced in the case at bar.

Turning to the remaining provisions of OCGA § 33-7-11 (b) (1) (D), appellants argue that because the possibility exists that liability coverage under the State Farm policies might be exhausted by payment of other claims arising from the accident (thereby preventing payment of appellants' claim), a legal denial of coverage could result, thus qualifying the Stewart vehicle as an "uninsured motor vehicle" under subsection (iii). We find merit in this argument.

This court has held in *Hemphill v. Home Ins. Co.*, 121 Ga. App.

323, 335 (174 SE2d 251) (1970), that a legal denial of coverage under OCGA § 33-7-11 is a denial of coverage which is "legally sustainable." OCGA § 33-7-11 "is designed to apply in several situations where there is a liability policy in effect, but for some reason no recovery can be obtained against the liability insurance carrier." *Smith v. Commercial Union Assur. Co.*, 246 Ga. 50, 52 (268 SE2d 632) (1980). We hold that as a matter of law, denial of coverage by a liability insurance carrier resulting from exhaustion of the available coverage by payment of other valid claims constitutes a "legal denial of coverage" under OCGA § 33-7-11 (b) (1) (D) (iii). We note that for policies issued, delivered, or renewed on or after January 1, 1987, Ga. L. 1986, p. 394, § 2 (amended OCGA § 33-7-11 (b) (1) (D) (ii)), covers just such an eventuality by providing that a vehicle shall be considered uninsured when "available coverage" (defined as "the limits of coverage less any amounts by which the maximum amounts payable under such limits . . . have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage") is less than the uninsured motorist coverage limits. Ga. L. 1986, pp. 394-395. Statutes should be construed in harmony with the policy of the law. *Singleton v. Close*, 130 Ga. 716, 720 (1) (61 SE 722) (1908). In keeping with the remedial nature of the uninsured motorist law, and in the absence of controlling authority to the contrary, we do not find the legislature's explicit addition of clarifying language to subsection (ii) to cover situations such as the one sub judice indicates that this matter was not already implicitly included in subsection (iii).

Although our holding above is dispositive as to the matter of law presented by appellee's motion for summary judgment, it appears no evidence was before the trial court as to whether Stewart's liability coverage was or was not exhausted, and thus, no determination could be made whether the Stewart vehicle was uninsured. Without the resolution of that issue of fact, summary judgment in favor of either party was inappropriate, and the trial court therefore erred by granting appellee's motion for summary judgment. See generally *Buffington v. Leader Nat. Ins. Co.*, 179 Ga. App. 177, 178 (345 SE2d 684) (1986).

2. Appellants also enumerate as error the trial court's denial of their cross-motion for summary judgment. For the reasons discussed in Division 1, the denial of summary judgment to appellants was proper on the issue of whether the Stewart vehicle was "uninsured." In addition, contrary to the arguments of both parties, this case was not amenable to summary adjudication on the issue whether appellants notified appellee in timely fashion of their claim. It is uncontroverted that appellants did not notify appellee of the accident or any possible claim until filing the tort action approximately two years later, and that the policies in question require notice "as soon as prac-

ticable." However, " '[t]he uninsured motorist endorsement becomes operative, not when there has been an accident, *but when it is ascertained that the operator was uninsured.* Where the uninsured motorist endorsement provides for notice as soon as practicable, this should be interpreted as if it read as soon as practicable after discovery of the uninsured status . . . [Cit.]' " (Emphasis supplied.) *Gregory v. Allstate Ins. Co.*, 134 Ga. App. 461, 464 (214 SE2d 696) (1975). Here, the evidence did not show if or when the "uninsured status" was discovered. Thus, the trial court could not decide whether appellants gave notice "as soon as practicable" until facts were developed showing whether the Stewart liability coverage was exhausted, and if so, when. It follows that the trial court properly denied summary judgment to appellants. See generally *Smith v. Rowell*, 176 Ga. App. 100, 101 (335 SE2d 461) (1985).

3. Finally, appellants maintain that a petition for declaratory judgment was improper here because all matters of coverage could have been raised by appellee in the tort action. This contention is without merit. Contrary to appellants' argument, *Tennessee Farmers &c. Ins. Co. v. Wheeler*, 170 Ga. App. 380, 381 (317 SE2d 269) (1984) is factually distinguishable and therefore inapposite. In *Tennessee Farmers*, before filing its petition for declaratory relief the uninsured motorist carrier had elected under OCGA § 33-7-11 (d) to answer the Georgia tort action in its own name, thus conferring upon the Georgia court jurisdiction to decide the identical questions regarding coverage which it later improperly put before the Tennessee court. Id. at 381. We held in *Tennessee Farmers* the declaratory judgment action was improper "[u]nder the facts and circumstances presented" there, since "[w]hen an insurer elects to file pleadings in its own name in an action brought under OCGA § 33-7-11, 'all rights may be asserted in the main action and there is no necessity for direction in a separate action for a declaratory judgment.' [Cits.]" Id. In the case sub judice, appellee "is not a party to the damage [action] and the question of its coverage is not in issue there. Suits for declaratory judgment by an automobile insurance carrier seeking to determine questions of coverage with respect to pending tort actions have been approved in numerous instances by the Supreme Court [cits.], and in countless others by this court [cits.], and no reason appears why the present suit is not maintainable." *Smith v. State Farm &c. Ins. Co.*, 122 Ga. App. 430, 432 (1) (177 SE2d 195) (1970). Accord *Coleman v. Dairyland Ins. Co.*, 130 Ga. App. 228, 230 (202 SE2d 698) (1973).

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 8, 1987 —
REHEARING DENIED SEPTEMBER 28, 1987 —

*George P. Graves*, for appellants.
*N. David Wages, John E. Stell, Jr.*, for appellee.